GERON LEGAL ADVISORS LLC
Yann Geron
Nicole N. Santucci
Jeannette Litos
Alejandro Urquides
370 Lexington Avenue, Suite 1208
New York, New York 10017
(646) 560-3224
ygeron@geronlegaladvisors.com
jlitos@geronlegaladvisors.com
aurquides@geronlegaladvisors.com

*Attorneys for Yann Geron, Chapter 7 Trustee/Plaintiff*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x

In re                                                          :
                                                               :   Chapter 7
DAVOUD GHATANFARD a/k/a DAVID                                  :
GHATANFARD,                                                    :
                                                               :   Case No. 23-22840-shl
                                                    Debtor.    :
------------------------------------------------------------- x
YANN GERON, Chapter 7 Trustee of the Estate of                :
Davoud Ghatanfard a/k/a David Ghatanfard,                     :
                                                               :
                                                   Plaintiff,  :
                                                               :
-against-                                                      :   Adv. Pro. No. 25-_____- shl
                                                               :
ROSEY KALAYJIAN AND HAMPTONS                                  :
CONSULTING SERVICES LLC,                                       :
                                                               :
                                                 Defendants.   :
------------------------------------------------------------- x

## COMPLAINT

Yann Geron (the "Trustee" or "Plaintiff"), the Chapter 7 Trustee of the estate Davoud

Ghatanfard a/k/a David Ghatanfard (the "Debtor"), by and through his counsel, Geron Legal

Advisors LLC, as and for his complaint against Rosey Kalayjian ("Ms. Kalayjian") and Hamptons

Consulting Services LLC ("HCS") (each a "Defendant" and collectively, the "Defendants"), upon

information and belief, upon information and belief, alleges as follows:

## PRELIMINARY STATEMENT

The Debtor is an individual and restauranteur who was primarily in the business of owning and managing various restaurants including Laura Christy Midtown LLC[1] ("LCM") d/b/a Valbella Midtown, Laura Christy LLC d/b/a Valbella Meatpacking, and One If By Land ("OIBL"), each fine dining establishments offering upscale cuisine in New York City.

In or about June 2022, a judgment in the amount of $5,092,017.85 plus interest was entered against the Debtor and related entities in favor of Pavle Zivkovic, on behalf of himself and other similarly situated employees. Ms. Kalayjian was not a defendant in this action. After commencement of this litigation and in anticipation of the entry of the judgment against him, the Debtor transferred nearly all his assets to Ms. Kalayjian, his life and business partner of at least 20 years and consequently an insider of the Debtor and HCS. In at least one instance, Ms. Kalayjian thereafter transferred the Debtor's assets to or for the benefit of HCS, an insider of Ms. Kalayjian. The Debtor made the Transfers in contemplation of the judgment and with the actual intent to insulate his assets from the effects of the judgment. This adversary proceeding seeks (i) the avoidance and recovery of actual and constructive fraudulent transfers made by the Debtor to or for the benefit of the insider Defendants, pursuant to 11 U.S.C. §§ 548(a), 550, and 551, and sections 273 to 275 of the New York Debtor and Creditor Law; and, alternatively, (ii) damages that the Debtor and his creditors suffered as a result of the Defendants' unjust enrichment.

---

[1] Laura Christy Midtown LLC is a related debtor whose Chapter 7 bankruptcy case is pending in the Bankruptcy Court (Case No. 23-22845) before the Honorable Sean H. Lane, United States Bankruptcy Judge.

## JURISDICTION AND VENUE

1.      This adversary proceeding arises under the above-captioned Chapter 7 bankruptcy case pending in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

2.      The Bankruptcy Court has jurisdiction over this adversary proceeding by virtue of 28 U.S.C. §§ 157(a) and (b) and 1334(b), and the "Amended Standing Order of Reference" of the United States District Court for the Southern District of New York (Preska, C.J.), dated January 31, 2012.

3.      The Trustee consents to the entry of final orders or judgments by the Bankruptcy Court with respect to all matters and claims raised by this Complaint.

4.      The Trustee waives any right to a jury trial.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1409(a) because this proceeding arises in a case under Title 11 of the United States Code (the "Bankruptcy Code") pending in this district.

## BASIS FOR RELIEF

6.      This adversary proceeding is brought pursuant to sections 548(a)(1)(A) and (B), 550, and 551 of the Bankruptcy Code, sections 273, 274, and 275 of the New York Debtor and Creditor Law ("NY DCL"), and the common law theory of unjust enrichment.

## PARTIES

7.      Yann Geron is a member of the panel of private Chapter 7 trustees established by the United States Trustee pursuant to 28 U.S.C. § 586(a)(1). As Chapter 7 Trustee of the Debtor's bankruptcy estate, Mr. Geron is empowered to bring this action on behalf of the estate and its creditors.  The Trustee maintains offices at c/o Geron Legal Advisors, LLC, 370 Lexington

Avenue, Suite 1208, New York, New York 10017.

8.      Ms. Kalayjian is an individual with a residence at 56 Oak Grove Road, Southampton, New York 11968.

9.      HCS is a Florida limited liability company with a principal place of business at 203 Soriano Drive, Jupiter, FL 33458.

**FACTS COMMON TO ALL CAUSES OF ACTION**

**A.  Class Action Judgment Against the Debtor**

10.     On or about January 25, 2017, a group of employees sued LCM and the Debtor, among others, in the United States District Court for the Southern District of New York in an action entitled *Zivkovic v. Laura Christy Midtown LLC et al* bearing index number 17-00553 (the "Class Action").

11.     Ms. Kalayjian is not a party to the Class Action.

12.     In or about April 2022, a jury trial was held and a verdict in favor of the Class Action plaintiffs was entered.

13.     On or about June 22, 2022, a judgment was entered against the Debtor and related entities and in favor of the Class Action plaintiffs in the amount of $5,092,017.85 plus interest, fees and costs (the "Judgment").

14.     On or about July 20, 2022, the Debtor appealed the Judgment to the Second Circuit Court of Appeals[2].

15.     The Appeal was initially stayed pursuant to Section 362 of the Bankruptcy Code because of the filing of Debtor's bankruptcy petition.

---

[2] Docket No. 22-1558, USCA 2d. Cir (the "Appeal")

4

16.     Following his bankruptcy filing, on or about November 14, 2023, the Debtor sought an order from the Bankruptcy Court lifting the automatic stay imposed by Section 362 of the Bankruptcy Code to proceed with the Appeal.  By order dated November 29, 2023, the Debtor's application was granted [DE 26].

17.     On May 15, 2025, the Appeal was dismissed for lack of appellate jurisdiction.

18.     The full amount of the Judgment, plus interest, remains due and owing.

19.     On or about October 30, 2025, the Bankruptcy Court entered an order modifying the automatic stay to permit enforcement in the District Court of a temporary restraining order and an attachment order issued against Ms. Kalayjian in the Class Action.

**B. The Debtor's Bankruptcy Case**

20.     On November 13, 2023 (the "Petition Date"), the Debtor filed his voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code.

21.     On November 13, 2023, the United States Trustee appointed the Trustee to serve as Subchapter V Trustee in the bankruptcy case pursuant to section 1183(a) of the Bankruptcy Code [Docket No. 5].

22.     On April 11, 2024, the Court entered an Order Granting Motion to Convert Case to Chapter 7 [DE 68].

23.     On April 29, 2024, Yann Geron was appointed the Chapter 7 Trustee of the Debtor's estate [DE 81].  Mr. Geron has since qualified and is currently acting as permanent chapter 7 trustee of the Debtor's bankruptcy estate.

24.     The Debtor's bankruptcy schedules filed in his bankruptcy case [DE 32 and 45] list his 100% ownership interest in LCM, 10% ownership interest in Oak Grove Road LLC ("OGR"), and his 50% ownership interest in real property located at 56 Oak Grove Road, Southampton, New

York 11968 (the "Southampton Property").

**C. The Debtor's Businesses and Transfers to Ms. Kalayjian**

25.     From approximately 2011 through 2020, the Debtor owned and managed LCM. Upon information and belief, LCM ceased operations in or about February 2022.

26.     The Debtor was and remains the sole owner of LCM.

27.     From on or about February 16, 2021, through September 28, 2021, the Debtor received approximately $1.2 million in distributions from LCM (the "LCM Distributions").

28.     Between on or about February 18, 2021, and October 6, 2021, the Debtor transferred $741,000 of the LCM Distributions to Ms. Kalayjian's personal account ending in 5258 at Patriot Bank (the "Kalayjian Patriot Account").

29.     From approximately 2015 through 2021, the Debtor was the sole owner of OIBL.

30.     On or about November 17, 2021, the Debtor sold his interest in OIBL for $600,000 in cash payment (the "OIBL Funds").

31.     Two days later, on or about November 19, 2021, the Debtor transferred the OIBL Funds to the Kalayjian Patriot Account.

32.     On February 26, 2021, the Debtor formed OGR with the Debtor acting as its sole member.

33.     Pursuant to the Limited Liability Company Agreement of Oak Grove Road LLC (the "OGR Operating Agreement"), dated February 16, 2021, the Debtor was entitled to receive a salary before any distributions could be paid from OGR.

34.     The Debtor never received any salary from OGR.

35.     On or about June 16, 2022, the OGR Operating Agreement was amended pursuant to the First Amendment to the Operating Agreement of Oak Grove Road LLC (the "Amended

6

OGR Operating Agreement").

36. Pursuant to the Amended OGR Operating Agreement, the Debtor transferred 90% of his interest in OGR to Ms. Kalayjian (the "OGR Transfer") and maintained a 10% interest in OGR.

37. According to the Amended OGR Operating Agreement, in consideration of the OGR Transfer, Ms. Kalayjian made a $600,000 contribution from the Kalayjian Patriot Account and was to make an additional $800,000 contribution. However, Ms. Kalayjian made only a portion of the additional $800,000 contribution and funded that portion of the contribution from a joint account maintained by the Debtor and Ms. Kalayjian at Patriot Bank ending in 6761 (the "Joint Account").

38. While Ms. Kalayjian made the $600,000 contribution to OGR which she committed to make under the Amended OGR Operating Agreement from the Kalayjian Patriot Account, the funds in the Kalayjian Patriot Account were, in fact, comprised almost entirely of funds received from avoidable fraudulent transfers made by the Debtor to Ms. Kalayjian which the Trustee seeks to avoid and recover in this proceeding.

39. OGR's tax returns for the years 2022 and 2024 indicate that OGR made $1.505 million in distributions to Ms. Kalayjian in 2022 and another $670,000 to Ms. Kalayjian in 2024, totaling $2.175 million (the "OGR Distributions").

40. Although the Debtor held a 10% interest in OGR in 2022 through 2024, OGR's tax returns indicate that OGR did not make any distributions to the Debtor from 2022 through 2024.

41. In April 2021, prior to the OGR Transfer, OGR and Alpine Pike Investments LLC ("Alpine Pike") formed Valbella at the Park LLC ("VATP"). OGR and Alpine Pike each owns 50% of VATP.

42. VATP is an upscale restaurant offering sophisticated, modern Italian foods which continues to operate from 3 Bryant Park, New York, New York 10036.

43. VATP opened for business in early March 2022. Approximately three months later, in or about June 2022, the Debtor transferred without receiving any consideration 90% of his ownership interest in OGR to Ms. Kalayjian, effectively giving her an approximate 45% interest in VATP.

**D. Debtor's Real Property and Transfers to the Defendants**

44. Prior to September 2020, the Debtor was the 100% owner of real property located at 9 Canterbury Road North, Harrison, New York (the "Harrison Property"). The Debtor was solely obligated to pay the mortgage on the Harrison Property.

45. On or about September 11, 2020, approximately three years prior to the Petition Date and after the commencement of the Class Action, the Debtor sold the Harrison Property and deposited his net proceeds from the sale, totaling $1,237,762.50, into the Joint Account.

46. Within three days of the sale of the Harrison Property, between September 14, 2020, and September 18, 2020, the Debtor transferred $1.238 million from the Joint Account to the Kalayjian Patriot Account (the "Harrison Funds"). Ms. Kalayjian did not provide any reasonably equivalent consideration to the Debtor in exchange for these transfers.

47. Prior to the Petition Date, the Debtor was the 100% owner of the Southampton Property.

48. An appraisal dated December 4, 2021, obtained by the Debtor in connection with his application to refinance the Southampton Property lists the estimated value of the Southampton Property as $3.7 million.

49. On or about January 3, 2022, the Debtor received $1,422,793 in connection with

the refinancing of the mortgage on the Southampton Property (the "Southampton Funds").

50. The Southampton Funds were deposited into the Joint Account on January 10, 2022.

51. Two days later, on or about January 12, 2022, the Southampton Funds were withdrawn from the Joint Account.

52. On or about January 28, 2022, Ms. Kalayjian formed HCS and is its sole member.

53. On March 22, 2022, Ms. Kalayjian opened the HCS business checking account ending in 3510 at Seacoast National Bank (the "HCS Account") and deposited $1,422,793 into the HCS Account representing the Southampton Funds. Neither Ms. Kalayjian nor HCS provided any reasonably equivalent consideration in exchange for this transfer.

54. Approximately three days later, pursuant to a Bargain and Sale Deed dated on or about March 25, 2022, the Debtor transferred half of his ownership in the Southampton Property to Ms. Kalayjian (the "Southampton Transfer"). Ms. Kalayjian did not purchase this ownership interest from the Debtor, nor did she provide any reasonably equivalent value to the Debtor in exchange for this transfer.

55. As of the Petition Date, the Debtor purported to hold a 50% ownership interest in the Southampton Property.

56. As of the Petition Date, the Debtor continued to be the only party obligated to pay the mortgage on the Southampton Property and was the only party listed on the insurance policy for the Southampton Property.

57. Schedule A/B to the Debtor's bankruptcy petition [DE 32, 45, and 98] lists the estimated value of the Southampton Property as $2.5 million.

58. According to Redfin.com, the current estimated value of the Southampton Property

is approximately $4.46 million.

59.     In or about March 2022, the Debtor transferred $1.5 million from the Joint Account to the Kalayjian Patriot Account (the "Final Joint Account Funds").  This transfer cashed out the Joint Account, and this account was subsequently closed.

60.     On or about March 30, 2022, Ms. Kalayjian obtained two cashier's checks in the amount of $1 million and $500,000, respectively, representing the Final Joint Account Funds.

61.     In or about June 2022, Ms. Kalayjian deposited the Final Joint Account Funds in the HCS Account.  HCS did not provide any reasonably equivalent value in exchange for this transfer.

**E.  Summary of Transfers to the Defendants**

62.     From at least 2017 through 2024, Ms. Kalayjian has been employed at one or more of the Debtor's businesses.

63.     Ms. Kalayjian's personal checking account ending in 1520 at Citibank (the "Kalayjian Citibank Account") reflects modest regular weekly deposits of consistent sums indicative of income derived from employment.

64.     From January 2018 through May 2019, the Kalayjian Citibank Account reflects deposits of approximately $411 per week from LCM.

65.     The Kalayjian Citibank Bank Account reflects weekly direct deposits of approximately $456 per week in 2017, up to $540 per week in 2021, from OIBL.

66.     The Kalayjian Citibank Account reflects weekly ACH direct deposits of approximately $1200 per week in or about June 2022, up to $1600 per week in or about December 2024, from VATP.

67.     The foregoing regular income payments to Ms. Kalayjian from the Debtor's various

businesses stand in stark contrast to the significant irregular transfers made by the Debtor into the Kalayjian Patriot Account.

68.     While the source of funds in the Kalayjian Citibank Account appears to be employment income, the source of funds in the Kalayjian Patriot Account are almost entirely comprised of funds transferred directly by the Debtor to or for the benefit of Ms. Kalayjian.

69.     Similarly, most or all the funds in the HCS Account are comprised of Debtor funds which were initially transferred to Ms. Kalayjian and then subsequently transferred to HCS.

70.     In sum, between November 2019 and November 2023 (the "Avoidance Period"), the Debtor made the following transfers to or for the benefit of the Defendants which the Trustee seeks to avoid under applicable fraudulent conveyance laws:

(a)     Transfers to or for the benefit of Ms. Kalayjian:

    i.     Between December 2019 and August 2020, the Debtor transferred approximately $65,000 to the Kalayjian Patriot Account;

    ii.     In or around September 2020, the Harrison Funds totaling approximately $1.238 million deposited into the Kalayjian Patriot Account;

    iii.     From on or about February 18, 2021, through October 6, 2021, the LCM Distributions totaling approximately $741,000 deposited into the Kalayjian Patriot Account;

    iv.     On or about November 19, 2021, the OIBL Funds totaling $600,000 deposited into the Kalayjian Patriot Account;

    v.     On or about March 25, 2022, the transfer of 50% of the Debtor's interest in the Southampton Property to Ms. Kalayjian;

    vi.     On or about June 16, 2022, the transfer of 90% of the Debtor's interest in OGR to Ms. Kalayjian; and

    vii.     From in or around 2022 to and including 2024, the OGR Distributions totaling approximately $2.175 million deposited into the Kalayjian Patriot Account.

(collectively, the "Kalayjian Transfers" and, specifically, the Kalayjian Transfers iv through vii

are the "Kalayjian Two Year Transfers"); and

(b) Transfers to or for the benefit of HCS:

    i.    On or about March 22, 2022, the Southampton Funds totaling $1,422,793 deposited into the HCS Account; and

    ii.    In or about June 2022, the Final Joint Account Funds totaling $1.5 million deposited into the HCS Account.

(collectively, the "HCS Transfers").

71.    Based upon the Debtor's records, the Debtor's average monthly income during the Avoidance Period was approximately $12,400.

72.    The Debtor was aware of the pending Class Action at the time each of the Transfers was made and was concerned about the potential entry of a significant judgment against him.

73.    The Debtor was insolvent when the Transfers were made because his liabilities, including the damages sought by in the Class Action, exceeded the value of his assets.

74.    Specifically, based on records available to the Trustee, the Debtor's assets when he began making the Transfers were valued at approximately $6,134,364 and his liabilities, including the damages sought in the Class Action, exceeded $7,583,075.

**FIRST CAUSE OF ACTION**
**(Avoidance of Actual Fraudulent Transfers against Ms. Kalayjian)**
**(11 U.S.C. §§ 548(a)(1)(A), 550(a) and 551)**

75.    Plaintiff repeats and realleges each of the allegations contained in each of the preceding paragraphs of this Complaint as if the same were fully set forth herein at length.

76.    When each of the Kalayjian Two Year Transfers was made, Ms. Kalayjian was the Debtor's life and business partner.

77.    The transactions conducted between the Debtor and Ms. Kalayjian were not conducted at arm's length and were made because of their close personal relationship.

12

78.     Each of the Kalayjian Two Year Transfers were made by the Debtor with the actual intent to hinder, delay, or defraud the Debtor's creditors, and individuals and entities to which the Debtor would become obligated.

79.     Each of the Kalayjian Two Year Transfers was made to an insider of the Debtor.

80.     Each of the Kalayjian Two Year Transfers was made for little or no consideration.

81.     Each of the Kalayjian Two Year Transfers was made to frustrate any anticipated collection efforts by the plaintiffs in the Class Action.

82.     The Debtor continued to derive benefit from the property which he purported to transfer to Ms. Kalayjian.

83.     Ms. Kalayjian, individually, received a material personal benefit on account of each of the Kalayjian Two Year Transfers.

84.     Ms. Kalayjian exercised control and dominion over the property transferred by the Debtor and was the sole beneficiary of each of the Kalayjian Two Year Transfers.

85.     Each of the Kalayjian Two Year Transfers was made without any consideration, or with significantly inadequate consideration, to the Debtor.

86.     Each of the Kalayjian Two Year Transfers was made while the Debtor was aware of the pendency of the Class Action and in anticipation of or following the entry of the Judgment., and while he was aware of other debts and obligations that remained unpaid, which debts and obligations were beyond the Debtor's ability to repay as they matured.

87.     Each of the Kalayjian Two Year Transfers resulted in the Debtor transferring a significant portion of his assets to an insider to the detriment of his creditors.

88.     Based upon the foregoing, each of the Kalayjian Two Year Transfers must be avoided and set aside as fraudulent, and the money transferred, or the value thereof, should be

returned to the Debtor's estate. The Trustee is entitled to recover from Ms. Kalayjian an amount to be determined at trial that is not less than the full amount of the Kalayjian Two Year Transfers, plus any applicable costs and interest.

## SECOND CAUSE OF ACTION
### (Avoidance of Constructive Fraudulent Transfers against Ms. Kalayjian)
### (11 U.S.C. §§ 548(a)(1)(B), 550(a) and 551)

89. Plaintiff repeats and realleges each of the allegations contained in each of the preceding paragraphs of this Complaint as if the same were fully set forth herein at length.

90. The Debtor was insolvent on the dates each of the Kalayjian Transfers were made or became insolvent because of each of the Kalayjian Transfers

91. The Debtor was engaged in businesses or transactions, or was about to engage in businesses or transactions, for which the property remaining with the Debtor after each of the Kalayjian Transfers were effectuated constituted unreasonably small capital.

92. At the time he made each of the Kalayjian Transfers, the Debtor believed or reasonably should have believed he would incur debts beyond his ability to pay as such debts matured including, but not limited to, his liability to the plaintiffs in the Class Action.

93. Based upon the foregoing, each of the Kalayjian Transfers must be avoided and set aside as fraudulent, and the money transferred, or the value thereof, should be returned to the Debtor's estate. The Trustee is entitled to recover from Ms. Kalayjian an amount to be determined at trial that is not less than the full amount of the Kalayjian Transfers, plus any applicable costs and interest.

## THIRD CAUSE OF ACTION
### (Avoidance of Constructive Fraudulent Transfers against HCS)
### (11 U.S.C. §§ 548(a)(1)(B), 550(a) and 551)

94. Plaintiff repeats and re-alleges each of the allegations contained in each of the

14

preceding paragraphs of this Complaint as if the same were fully set forth herein at length.

95.     HCS was the subsequent transferee of certain of the Transfers made by the Debtor to Ms. Kalayjian.

96.     The Debtor was insolvent on the date the HCS Transfers were made or became insolvent as a result of the HCS Transfers.

97.     When the HCS Transfers were made, the Debtor was engaged in businesses or transactions, or was about to engage in businesses or transactions, for which the property remaining with the Debtor after the HCS Transfers were made constituted unreasonably small capital.

98.     When the HCS Transfers were made, the Debtor believed or reasonably should have known that he would incur debts beyond his ability to pay as such debts matured including, but not limited to, the liability to the Class Action plaintiffs.

99.     Based upon the foregoing, the HCS Transfers must be avoided and set aside as fraudulent, and the money transferred, or the value thereof, should be returned to the Debtor's estate. The Trustee is entitled to recover from HCS an amount to be determined at trial that is not less than the full amount of the HCS Transfers, plus any applicable costs and interest.

**FOURTH CAUSE OF ACTION**
**(Avoidance of Fraudulent Transfers against Ms. Kalayjian)**
**(New York Law, DCL §§ 273-275)**

100.     Plaintiff repeats and realleges each of the allegations contained in each of the preceding paragraphs of this Complaint as if the same were fully set forth herein at length.

101.     Each of the Kalayjian Transfers constituted a transfer of an interest of the Debtor's property.

102.     At all relevant times, there have been one or more creditors who have held and still

15

hold matured or unmatured unsecured claims against the Debtor that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e), including the employee class on account of the Judgment.

103.   At the time of each of the Kalayjian Transfers, the Debtor was engaged or was about to engage in a business or transaction for which the property remaining in his possession after the Transfers was an unreasonably small capital.

104.   At the time of the each of the Transfers, Ms. Kalayjian was aware or should have been aware that the Debtor was insolvent and did not have the ability to pay his debts as those debts became due.

105.   Ms. Kalayjian received each of the Kalayjian Transfers without good faith and with the knowledge of their voidability.

106.   Based upon the foregoing, each of the Kalayjian Transfers must be avoided and set aside as fraudulent, and the money transferred, or the value thereof, should be returned to the Debtor's estate. The Trustee is entitled to recover from Ms. Kalayjian an amount to be determined at trial that is not less than the full amount of the Kalayjian Transfers, plus any applicable costs and interest.

**FIFTH CAUSE OF ACTION**
**(Avoidance of Fraudulent Transfers against HCS)**
**(New York Law, DCL §§ 273-275)**

107.   Plaintiff repeats and re-alleges each of the allegations contained in each of the preceding paragraphs of this Complaint as if the same were fully set forth herein at length.

108.   HCS was the initial transferee of the Southampton Funds.

109.   HCS was the subsequent transferee of the Final Joint Account Funds.

110.   The Southampton Funds and the Final Joint Account Funds are part of the HCS

Transfers.

111.   The HCS Transfers constituted transfers of an interest of the Debtor's property.

112.   At all relevant times, there have been one or more creditors who have held and still hold matured or unmatured unsecured claims against the Debtor that were and are allowable under section 502 of the Bankruptcy Code or that were and are not allowable only under section 502(e), including the employee class on account of the Judgment.

113.   At the time of the HCS Transfers, the Debtor was engaged or was about to engage in a business or transaction for which the property remaining in his hands after the HCS Transfers was an unreasonably small capital.

114.   At the time of the HCS Transfers, HCS, through Ms. Kalayjian, was aware or should have been aware that the Debtor was insolvent and did not have the ability to pay his debts as those debts became due.

115.   HCS, through Ms. Kalayjian, received the HCS Transfers without good faith and with the knowledge of their voidability.

116.   Based upon the foregoing, the HCS Transfers must be avoided and set aside as fraudulent, and the money transferred, or the value thereof, should be returned to the Debtor's estate. The Trustee is entitled to recover from HCS an amount to be determined at trial that is not less than the full amount of the HCS Transfers, plus any applicable costs and interest.

**SIXTH CAUSE OF ACTION**
**(Unjust Enrichment against Ms. Kalayjian)**
**(New York Common Law)**

117.   Plaintiff repeats and realleges each of the allegations contained in each of the preceding paragraphs of this Complaint as if the same were fully set forth herein at length.

118.   The Debtor made the Kalayjian Transfers to, or for the benefit of Ms. Kalayjian,

17

thus conferring benefits upon her in the amount of the value of the Kalayjian Transfers.

119.    Ms. Kalayjian knowingly and voluntarily accepted and retained the benefits of the Kalayjian Transfers conferred upon her by the Debtor while knowing that she did not provide fair consideration or reasonably equivalent value to the Debtor in exchange for the Kalayjian Transfers.

120.    Ms. Kalayjian has been unjustly enriched at the expense of the Debtor, his estate and creditors.

121.    It would be inequitable and unjust for Ms. Kalayjian to retain the benefits of the Kalayjian Transfers in these circumstances.

122.    Accordingly, in the alternative to a finding in favor of the Trustee for the avoidance and recovery of the fraudulent transfer claims asserted against Ms. Kalayjian in Counts One, Two, and Four of this complaint, the Trustee is entitled to an order and judgment against Ms. Kalayjian in the amount of the Kalayjian Transfers, reflecting the value of Ms. Kalayjian's unjust enrichment resulting from the Kalayjian Transfers.

## SEVENTH CAUSE OF ACTION
### (Unjust Enrichment against HCS)
### (New York Common Law)

123.    Plaintiff repeats and realleges each of the allegations contained in each of the preceding paragraphs of this Complaint as if the same were fully set forth herein at length.

124.    The Debtor transferred the Southampton Funds to or for the benefit of Ms. Kalayjian, thus conferring benefits upon her in the amount of the value of the that transfer. Ms. Kalayjian, the sole member of HCS, then transferred the Southampton Funds to HCS.

125.    HCS, a subsequent transferee, knowingly and voluntarily accepted and retained the benefits of the Southampton Funds conferred upon it by the Debtor as subsequent transferee with the knowledge that it did not provide fair consideration or reasonably equivalent value to the

18

Debtor in exchange for Southampton Funds.

126.   The Debtor also transferred the Final Joint Account Funds directly to HCS.

127.   HCS knowingly and voluntarily accepted and retained the benefits conferred upon it by the Debtor while knowing that it did not provide fair consideration or reasonably equivalent value to the Debtor in exchange for Final Joint Account Funds.

128.   HCS has been unjustly enriched at the expense of the Debtor, his estate and creditors.

129.   It would be inequitable and unjust for HCS to retain the benefits of the transfers of the Final Joint Account or the Southampton Funds conferred upon it in these circumstances.

130.   Accordingly, in the alternative to a finding in favor of the Trustee for the avoidance and recovery of the fraudulent transfer claims asserted against HCS in Counts Three and Five of this complaint, the Trustee is entitled to an order and judgment against HCS in the amount of the HCS Transfers, reflecting the value of HCS's unjust enrichment resulting from the HCS Transfers.

## **RESERVATION OF RIGHTS**

131.   The Trustee's investigation into the Debtor's financial affairs is ongoing. Pursuant to recent Bankruptcy Court orders, the Trustee received certain long-sought document production from the Defendants only one day prior to the filing of this complaint. The Trustee may discover additional transfers or claims against the Defendants under the various provisions of the Bankruptcy Code or state law. Accordingly, the Trustee hereby expressly reserves the right to amend or supplement either the factual bases or the relief requested in this complaint.

**WHEREFORE**, the Trustee/Plaintiff demands judgment against the Defendants as follows:

A.   Avoiding the Kalayjian Transfers as fraudulent conveyances, pursuant to 11

19

U.S.C. §§ 548(a), 550, and 551, and N.Y. Debtor and Creditor Law §§ 273-275, and directing the Ms. Kalayjian to turn over the Kalayjian Transfers, or the value thereof, to the Trustee in an amount not less than $8.044 million or as otherwise determined at trial;

B.     Avoiding the HCS Transfers as fraudulent conveyances, pursuant to 11 U.S.C. §§ 548(a), 550, and 551, and N.Y. Debtor and Creditor Law §§ 273-275, and directing HCS to turn over the HCS Transfers, or the value thereof, to the Trustee in an amount not less than $2,922,793 or as otherwise determined at trial;

C.     In the alternative, requiring Ms. Kalayjian to return the unjust benefits conferred upon her by the Debtor in an amount not less than $8.044 million or as otherwise determined at trial;

D.     In the alternative, requiring HCS to return the unjust benefits conferred upon it by the Debtor in an amount not less than $2,922,793 or as otherwise determined at trial;

E.     Awarding attorneys' fees, costs, and pre-judgment interest; and

(continued on the next page)

F.       Granting the Trustee such other and further relief as this Court deems just

and proper.

Dated:   New York, New York                    GERON LEGAL ADVISORS LLC
            November 13, 2025                    *Attorneys for the Trustee/Plaintiff*


By:   *s/ Yann Geron*
       Yann Geron
       Nicole N. Santucci
       Jeannette Litos
       Alejandro Urquides
       370 Lexington Avenue, Suite 1208
       New York, New York 10017
       (646) 560-3224
       ygeron@geronlegaladvisors.com
       jlitos@geronlegaladvisors.com
       aurquides@geronlegaladvisors.com